# WHITE *v.* CONNECTICUT GENERAL LIFE INSURANCE COMPANY. (2)

APPEALS; APPEAL BONDS; PROMISSORY NOTES; EVIDENCE; JOINT OBLIGA
TIONS; JOINDER OF PARTIES; EXECUTORS AND ADMINISTRATORS; STAT
UTE OF LIMITATIONS.

1. Where an appeal bond is for costs only, it need not be signed by all of
the appellants.

2. On an appeal from the supreme court of the District of Columbia to this
court·in a law cause a notice of appeal is equivalent to the suing out
of a writ of error.

3. Where, in an action against one of two joint makers of a promissory
note, and the executors of the other, judgment is rendered against
the executors, one of the executors may join his coexecutors in taking
an appeal, whether they consent or not.

4. *Quære,*—whether in an action commenced against one of two joint
makers of a promissory note and the executors of the other, but which
is being prosecuted only against the executors, it is competent under
D. C. Code, sec. 1064 (31 Stat. at L. 1357, chap. 854), for the other
defendant, as a witness for the plaintiff, to testify as to transactions with his deceased comaker of the note relating to the payment
of interest, in order to show that the action is not barred by the
statute of limitations.

5. D. C. Code, secs. 1205 and 1206, 31 Stat. at L. 1380, chap. 854, providing that, for the purposes of suit, joint contracts shall be deemed
joint and several, and that the executors of a joint obligor shall be
bound to the same extent as if the obligation were joint and several,
do not take from the executors of a joint obligor a defense which
existed at common law, but merely enable them to be sued at law
where otherwise they could be proceeded against only in equity, and
are therefore applicable to an action brought against such executors
although enacted subsequent to the obligation sued upon.

6. The executors of a deceased joint obligor may be joined in an action
at law with his co-obligor. (Construing D. C. Rev. Stat. sec. 827, and
D. C. Code, secs. 1205 and 1206, and citing *Harris* v. *Leonhardt,* 2
App. D. C. 318.)

7. D. C. Rev. Stat. sec. 827, and D. C. Code, secs. 1205 and 1206, relating
to joinder of parties and joint contracts, relate to procedure only,

and do not convert a joint obligation into a joint and several obligation. The contract and the obligations of the contractors remain unchanged.

8. Payment of interest on joint promissory notes by one of the makers will arrest the running of the statute of limitations in favor of the other maker. (Following *Flannery* v. *Maine Red Granite Co.* 3 App. D. C. 395.)

9. Arrangements by joints makers of promissory notes as to the ultimate payment of the notes, or as to payment of interest thereon, as between themselves, will not affect the right of recovery on the notes by the holders.

No. 2024.   Submitted December 8, 1909.   Decided February 14, 1910.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action on promissory notes, and on a motion by the appellee to dismiss the appeal.

*Motion denied and judgment affirmed.*

The facts are stated in the opinion.

*Messrs. McNeill & McNeill* and *Mr. M. J. Colbert* for the appellants.

*Mr. S. R. Bond* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This suit was brought in the supreme court of the District of Columbia by the appellee, the Connecticut General Life Insurance Company, against Jane M. White, Jennie W. Fugitt, and Charles White, Jr., as executors of the estate of Charles White, deceased, and Charles White, Jr., individually, to recover the sum of $5,500, with interest, being a balance claimed by appellee, plaintiff below, to be due upon six certain promissory notes, dated March 1, 1888, for $1,000 each, made by Charles White, since deceased, and Charles White, Jr., one of

the defendants below.  The notes were each in form as follows:

$1,000.                      Washington, D. C., March 1, 1888.

Two years after date, for value received, we promise to pay to the order of the Connecticut General Life Insurance Company, one thousand dollars, with interest thereon, until paid, at the rate of six per cent per annum, payable semiannually at the Central National Bank.

Charles White.<br>Charles White, Junior.

Separate pleas, upon which issue was joined, were filed by each of the executors as such, but no plea or defense of any kind was interposed by Charles White, Jr., in his individual capacity. On trial, a verdict was returned by the jury against the three executors, omitting any reference to Charles White, Jr.  Judgment was entered upon the verdict, from which this appeal is prosecuted.

A motion has been filed by counsel for appellee to dismiss the appeal, for the reason "that the sole appellant is Jennie W. Fugitt, executor; that she was a party defendant in the cause jointly with her coexecutors, Jane M. White and Charles White, Jr., who had, and have, beneficial and substantial interests therein, and that the judgment appealed from was entered against them jointly with said Jennie W. Fugitt, but that they had not become parties to the appeal, or joined in perfecting the same, nor has there been any summons and severance, or any equivalent proceeding as to them."  It appears that, when the judgment was entered in the court below, notice of appeal was given by all of the executors.  No supersedeas bond was given.  A cost bond was given and signed by Jennie W. Fugitt alone.  While the bond given is on the blank used in preparing supersedeas bonds, the order of the court provided as follows relative to the bond: "The said defendants note an appeal to the court of appeals of the District of Columbia, and the penalty of the bond for costs on said appeal is hereby fixed in the sum of $100."  The

bond, regardless of the form in which drawn, was manifestly intended only as security for costs, and will be treated as such.* Where the bond is for costs only, and the appeal does not operate as a supersedeas, it need not be signed by all the appellants. *Scruggs* v. *Memphis & C. R. Co.* 131 U. S. CCIV, Appx. and 26 L. ed. 741.

Had the judgment here been a joint one against the executors in their representative capacity and Charles White, Jr., individually, this appeal could not have been perfected by the parties before us without summons and severance against Charles White, Jr. But that is not this case. In the judgment before us, Charles White, Jr., has been eliminated from all personal responsibility as a joint maker of the notes, and the estate of the other joint maker has been charged with the entire indebtedness. The reason for the inactivity of Charles White, Jr., in connection with this appeal is quite apparent. His personal interest, however, in the result should not be permitted to defeat the estate of any right to which it is entitled, or to estop the remaining executors from availing themselves of any remedy afforded for the protection of the estate. It may be insisted that a part of their remedy was to secure a summons and severance against Charles White, Jr., as executor, but this, we think, was not necessary. In *Portis* v. *Creagh,* 4 Port. (Ala.) 332, it was held that one of three executors "had a right to sue out a writ of error in the name of all, even without their consent," but that he "could not take a writ of error in his own name." In *Harrington* v. *Roberts,* 7 Ga. 510, the court said: "Both administrators are parties to the suit below, and to the judgment sought to be reversed; and we are of opinion that both should have joined in the bill of exceptions and writ of error. The doctrine is well settled that where there are two administrators, one cannot maintain an action alone. * * * Of course the writ of error will be dismissed, unless all the parties to the cause below are included."

In the case at bar all three executors gave notice of appeal.

---

*See White v. Connecticut General L. Ins. Co. ante, 458. REPORTER.

One signed the bond, and two prayed a bill of exceptions. Since the securing of a bill of exceptions is a part of the proceedings below, antecedent to the taking of an appeal, the notice of appeal in our practice is equivalent to the suing out of a writ of error, where the case is brought up on error, instead of by appeal. The judgment is against the estate, and not a personal one against the executors. Hence, there is no necessity for summons and severance. All that is essential is that the executors shall be joined in the appeal. This may be accomplished by one or more of the executors taking the appeal and joining the others, with or without their consent. Here all joined in the notice of appeal, which was sufficient, in the absence of a supersedeas bond. The motion is therefore denied.

We now come to the merits of the case. Appellants contend that the notes sued on are barred by the statute of limitations. It appears that, at the time of the making of the notes, Charles White and Charles White, Jr., were partners conducting a foundry business in the city of Washington. This partnership was dissolved in 1893, at which time it is claimed Charles White, Jr., assumed this indebtedness. Since that date, and up to September 1, 1907, two months prior to the institution of this suit, Charles White, Jr., has kept the interest paid on said notes. At the trial, Charles White, Jr., was called as a witness on behalf of the appellee, and was asked the question: "I will ask you whether or not there was any arrangement between you and your father as to the payments after 1893," to which he replied: "The arrangement between father and myself after 1893 was that we were to pay the interest jointly, and I paid the interest and charged him up with his one half, as I paid it semi-annually. He paid me a part of it, and the rest remains unpaid." It is insisted that, under sec. 1064 of the Code, one of the parties to this transaction being dead, the mouth of the other should be closed as to any transaction between them relating directly to the matters here in issue. Manifestly this evidence was introduced to show that the statute of limitations had not run in favor of Charles White. In our view of the case, it will not be neces-

sary to express an opinion on this point, since upon other grounds the judgment must be sustained.

The second contention of the appellants is that in no event can the executors of the estate of Charles White, deceased, be sued jointly with Charles White, Jr. The notes in question are joint obligations. At common law, the representatives of the deceased obligor could not be sued at law or joined in a suit with his co-obligor at law or in equity. It is therefore insisted that the representatives of Charles White were improperly joined with Charles White, Jr., as co-obligor, and, further, that his executors could not be sued at law in any event, but only could be proceeded against in equity. It is insisted by counsel for appellee that, under sec. 827, D. C. Rev. Stat., in force in this District at the time these notes were given, the rule of the common law was so changed, modified, and repealed as to allow a joint suit at law against a surviving joint obligor and the representatives of a deceased joint obligor upon a joint instrument. It is also contended that secs. 1205 and 1206 of the District Code [31 Stat. at L. 1380, chap. 854] are applicable to the present case, and that, under these sections, this suit was properly brought. The sections in question are as follows:

"D. C. Rev. Stat. sec. 827. Where money is payable by two or more persons jointly or severally, as by joint obligors, covenantors, makers, drawers, or indorsers, one action may be sustained and judgment recovered against all or any of the parties by whom the money is payable, at the option of the plaintiff. But an action against one or some of the parties by whom the money is payable may, while the litigation therein continues, be pleaded in bar of another action against another or others of said parties."*

"Sec. 1205. What Contracts Joint and Several: Every contract and obligation entered into by two or more persons, whether partners or merely joint contractors, whether under seal or not, and whether written or verbal, and whether expressed to be

---

*See D. C. Code sec. 1211 (31 Stat. at L. 1380, chap. 854).—REPORTER.

joint and several or not, shall for the purposes of suit thereupon be deemed joint and several.

"Sec. 1206. Death of Joint Contractor: If one or more of such persons shall die, his or their executors, administrators, or heirs shall be bound by said contract in the same manner and to the same extent as if the same were expressed to be joint and several."

Secs. 1205 and 1206 came in force in the District with the adoption of the Code, long subsequent to the execution of the notes in question. It is insisted that if, by the enactment of these sections of the Code, a defense which existed at common law to this action was taken away, it destroyed the rights, immunities, and privileges which each maker of the obligation had at the time of the execution thereof, and is therefore unconstitutional. This would undoubtedly be true if the defendants were deprived of a substantial right or privilege that amounted to a vested right. Inasmuch, however, as at common law the representatives of a deceased comaker of a joint contract could be proceeded against in equity, the effect of the statutes would not be to deprive the defendants of a defense, but merely to change the forum from a court of equity to a court of law, and the mode of procedure by which an action on the joint contract might be maintained. Such a statute has never been held to invade any constitutional right. The mere regulation of the procedure of the courts, where it does not deprive the litigant of his remedy by due process of law, is a matter within the scope of the legislative department of the government.

This brings us to the object and effect of the statutes above quoted. In *Harris* v. *Leonhardt*, 2 App. D. C. 318, this court, considering sec. 827, supra, said: "The obvious meaning of this statute is to put the right of action on all contracts for the payment of money, whether joint or several, on one and the same footing, and to give to the plaintiff the right to judgment against all the parties bound by such contract. The statute embraces all contracts for the payment of money, and the contracts mentioned, of obligations, covenants, etc., are only by way of examples of what nature of contracts are embraced. But while

it is the intention of the statute to modify the common-law principles of merger of the cause of action in a judgment recovered against one of two or more joint contractors, it designs to avoid multiplicity of actions to be carried on simultaneously for the recovery of the same debt."

The reason for the common-law rule that the representatives of the deceased joint maker could not be joined in an action at law or in equity with a co-obligor, but must be proceeded against separately in equity, was upon the supposition that such a joint proceeding was unmanageable, in that, in the judgment, one would be charged *de bonis testatoris* and the other *de bonis propriis.* Discussing the effect of the statute before us as a modification of this rule, Mr. Justice James in *Keyser* v. *Fendall,* 5 Mackey, 47, said: "It was urged at the argument that this rule as to the bringing of actions should not be applied to legal representatives, first, because the statute relates in terms to the very parties by whom the money is payable, and because such moneys are not payable absolutely by administrators or executors; and second, because this statute does not purport to regulate the status or liabilities of such legal representatives. As to the first objection, we think no emphasis is to be laid on the word 'payable.' If the general purpose of the statute was, as we hold it to have been, to gather into one action what before had been subjects of several actions only, we should only defeat that purpose if we should refuse to apply it to any parties severally liable on the same instrument, where these several liabilities can be managed in such a proceeding." This interpretation is clearly supported in *Burdette* v. *Bartlett,* 95 U. S. 637, 24 L. ed. 534.

It will be observed that, while sec. 827 authorized a single action against all joint makers of an instrument and a judgment against all or any of the parties by whom the money was payable, sec. 1205 provides that joint contracts for the purpose of suit thereon shall be deemed joint and several contracts, and sec. 1206 provides for the joining of the legal representatives of a deceased joint contractor in the same manner and to the same extent as if the contract were joint and several. The position

of appellee with reference to the effect of these statutes is apparently misunderstood by counsel for appellants, where they say in their brief: "If the contention of appellee is to be taken, all joint notes are to be treated as having all the virtues, and none of the infirmities, of notes which are joint and several. In other words, they would have the court hold that two or more makers of an instrument, joint in form, may be treated as though it had been executed as an instrument joint and several, in so far as liability to suit thereon is concerned, but, on the other hand, they would keep alive the common-law principle that payment or acknowledgment by one joint debtor will 'bind all the rest,' even though they should have utterly denied the debt at the time when such acknowledgment was made,' though it cannot be seriously contended that any such payment or acknowledgment by a maker of a joint and several note would bind such makers of such note, joint and several." The mere fact that the representatives of a deceased co-obligor in a joint contract at common law could not be sued at law, or jointly with the other joint maker of the instrument in equity, was not an infirmity of joint contracts. It was only a matter of procedure affecting the remedy. The same liability existed against the estate that rested upon the deceased before his death. Neither did it impair the obligation or impose upon the estate of the deceased obligor any greater liability than existed against him in his lifetime. These statutes taken together simply provide that suits may be brought on joint instruments in the same manner as upon joint and several instruments. It merely affects the remedy. It relates wholly to procedure. It does not convert a joint instrument into a joint and several instrument, or change a joint obligor into a joint and several obligor. The contract and the relations of the obligations of the contractors remain unchanged.

Inasmuch as the notes in question are still joint instruments, and the makers are still joint obligors, it follows that the payment of interest thereon by one of the joint obligors prevents the statute of limitations from running in favor of the other.

*Bell* v. *Morrison,* 1 Pet. 351, 7 L. ed. 174; *Flannery* v. *Maine Red Granite Co.* 3 App. D. C. 395.

Appellee is not concerned with any private arrangement between the makers of these notes as to their ultimate payment, or as to the payment of the interest thereon. Hence, the arrangement between the makers testified to by Charles White, Jr., however important it may be in adjusting the rights between him and the executors of his father's estate, cannot affect the right of recovery by appellee.

The judgment is affirmed, with costs, and it is so ordered.

*Affirmed.*

A motion by the appellants for a reargument was overruled March 11, 1910. An application by them for a writ of error to the Supreme Court of the United States was granted May 27, 1910.